UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **INTERNATIONAL TRANSPORT WORKERS FEDERATION** | **CIVIL ACTION** |
| **VERSUS** | **NO: 13-454** |
| **MI-DAS LINE SA, ET AL.** | **SECTION: "B" (4)** |

### ORDER

Before the Court is a **Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37 (R. Doc. 8)** filed by Plaintiff, International Transport Workers Federation, ("ITF") seeking an Order from this Court imposing sanctions upon Defendants, Mi-Das Line, SA, ("Mi-Das") and Doun Kisen KK ("Doun") (collectively, "Defendants") for their failure to comply with discovery orders previously issued by the Louisiana state court. The motion is opposed (R. Doc. 12). The motion was heard with oral argument on Wednesday, March 27, 2013.

I.  **Factual Background**

   A.  **ITF's Complaint**

This case involves an international wage dispute brought by ITF, an international affiliation of trade unions, regarding wages paid to Burmese crew members of a particular vessel, the "M/V BRIGHT LAKER," which was owned and operated by Defendants. (R. Doc. 1-2, p. 1). ITF alleges that it entered into a contractual agreement with Defendants, who are Japanese shipping

corporations, for payment of "union rates" to its Burmese-based crew. *Id.* ("IBF Special Agrreement"). The IBF Special Agreement was signed by agents of ITF's Japanese office. *Id.* ITF argues that Defendants required the crew of the M/V BRIGHT LAKER to sign false accounting records indicating that they were being paid union-level wages, when in fact their real wages were far lower. *Id.*

ITF brought suit in Louisiana State Court on October 8, 2012, under the admiralty and maritime jurisdiction of the United States, particularly its "savings and suitors" clause, 28 U.S.C. § 1333. *Id.* at 2. ITF alleged that Defendants (1) breached their contract with ITF by failing to pay contractual rates to individual crew members as specified; (2) committed fraud by intentionally misrepresenting and suppressing the truth; and (3) committed unfair trade practices in violation of 51 U.S.C. § 1401 *et seq.*, which entitles ITF to an award of attorney's fees. *Id.* at 2-3.

ITF also alleged that the M/V/ BRIGHT LAKER was, at the time ITF filed the Complaint, operating in the navigable waters of Orleans Parish, even though the vessel was allegedly no authorized to do business in Louisiana. *Id.* at 1, 3. Therefore, ITF requested a writ of attachment pursuant to La. Civ. Code Ann. art. § 3541, which was granted by the presiding Louisiana State Court Judge on October 8, 2012. *Id.* at 6.

### B. <u>Subsequent Proceedings</u>

The case history after October 8, 2012, which gives rise to the instant motion, has been convoluted. On the same day the Complaint and Writ of Attachment were filed, ITF moved *ex parte* for an "Order Granting Immediate Discovery." (R. Doc. 1-2, p. 8). Specifically, ITF wished to depose the captain and crew of the M/V BRIGHT LAKER, as well as obtain certain documents from

the vessel, prior to the ship's departure from the New Orleans area. *Id.* The documents requested included:

> (A) the vessel's shipping articles;
> (B) all telexes, telefaxes, e-mails and reports of any nature pertaining to crew members and pay records;
> (C) crew list;
> (D) ISM codes located on the vessel;
> (E) ITF Special Agreement;
> (F) Individual Employment Contracts;
> (G) Pay records and vouchers;
> (H) Collective Bargaining Agreement covering the M/V BRIGHT LAKER; and
> (I) Any contract or document between defendants and the government of Burma (Myanmar).

*Id.* at 8; (R. Doc. 1-2, p. 8). The presiding State judge granted this order on October 8, 2012. (R. Doc. 8-1, p. 10). On October 15, 2012, Defendants removed the case to the U.S. District Court for the Eastern District of Louisiana. (No. 12-2503, R. Doc. 1). Once in federal court, Defendants moved to vacate ITF's attachment of the M/V BRIGHT LAKER. *See* (No. 12-2503, R. Docs. 4, 6, 8). On October 26, 2012, the presiding U.S. District Judge dismissed these motions as moot, noting that the M/V BRIGHT LAKER had since left Louisiana waters. (No. 12-2503, R. Doc. 20). On November 2, 2012, the judge subsequently granted ITF's motion to remand, noting, *inter alia*, that the Court's admirality jurisdiction was inapplicable in a dispute which exclusively involved alien parties. No. 12-2503, R. Doc. 24, pp. 3-6). Thus, for purposes of the instant motion, the merits of Defendant's motion to vacate were not addressed prior to the remand and closure of the prior federal case.

On November 7, 2012, ITF filed state-court discovery motions, which contained both Interrogatories and Requests for Production. (R. Doc. 8-2). On December 19, 2012, Mi-Das moved

3

to vacate the attachment of the M/V BRIGHT LAKER under several legal theories. (R. Doc. 12, p. 7). Shortly thereafter, Doun moved to dismiss the case against it, arguing that the Louisiana state court did not have constitutionally sufficient minimum contacts to support its personal jurisdiction over Doun. *Id.* at 7-8.

On December 26, 2012, ITF moved to compel responses to its discovery. (R. Doc. 8-1, p. 5). On January 25, 2013, the state trial court heard both ITF's discovery motion and Defendants' exceptions; on February 6, 2012, the court issued a written order regarding this judgment. (R. Doc. 8-3, pp. 2-4). On February 8, 2013, the state court signed the judgment. *Id.* at 1. The judgment states, in pertinent part:

> **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that defendant Mi-Das Line SA is to respond to Interrogatories propounded by plaintiff International Transport Works Federal within 30 days of the signing of this Order, and further defendant Mi-Das Line SA is to response to the Request for Production propounded by plaintiff International Transport Workers Federation within 30 days of the signing of this Order, and further defendant Mi-Das Line SA is to response separately to plaintiff International Transport Workers Federation's First Requests for Admission of Fact within 30 days of ths signing of this Order.

(R. Doc. 8-3, p. 4).

ITF contends, and Mi-Das does not dispute, that according to the plain language of the order, discovery was due on March 8, 2013. In its order, the state court also denied all of Defendants' exceptions, as well as a request for a stay of discovery on appeal. (R. Doc. 8-3, pp. 3-4).[1]

On February 22, 2013, Mi-Das filed an emergency writ for stay of the trial court's order with the Louisiana Court of Appeals for the Fourth Circuit. *See* (R. Doc. 8-1, p. 5). By March 8, 2013,

---

[1]For purposes of simplicity, the Court will refer to this second discovery order by its January 25, 2013 date. The court will also use the terms "order" and "judgment" interchangeably to refer to the January 25, 2013 decision.

4

Mi-Das' discovery responses were due but the state appellate court had yet to adjudicate the parties' emergency motion; on that day, Defendants removed the case to federal court, claiming that during the course of discovery they had determined that the contractual agreement which the ITF claims Defendants' breached includes a mandatory arbitration clause. (R. Doc. 1, p. 3). As such, Defendants argued that removal was proper under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 205. *Id.*[2]

Immediately after removal ITF brought the instant motion, requests that the Court "recognize the two Discovery Orders issued by the state court," as well as imposition of sanctions. (R. Doc. 8-1, p. 6). The motion is opposed.

## II. Law and Arguments

### A. Consideration of State Court Discovery Orders

#### 1. Parties Applicable

In support of its motion, ITF refers to "Defendants" without exception. In opposition, defendants argue that Doun has not failed to comply with any discovery order because the October 8, 2012 Order was not served on Doun; that the January 25, 2013 Judgment was directed only to Mi-Das, and did not involve Doun; and that as a result Doun was not obligated to comply with either of the two state court orders. (R. Docs. 12, pp. 1, 17; 8-3, p. 2). At oral argument, ITF conceded that the discovery orders it sought to enforce pertained only to Mi-Das; upon inspection of the plain language of the January 25, 2013 judgment, the Court finds that this is the case. Therefore, the

---

[2]ITF also argues that it "will timely file a Motion to Remand setting forth in detail why [Defendants' argument pertaining to the supposed arbitration clause] has no merit." (R. Doc. 8-1, p. 6). However, this remand motion, and the arguments thereto, are not currently before the undersigned.

Court's findings in this Order pertain only to Mi-Das.

### 2. Enforceability of State Court Orders

The first issue is the weight the Court should give the state trial court's two prior discovery orders on October 8, 2012 and January 25, 2013, which ITF requests that the undersigned "recognize." (R. Doc. 8-1, p. 5).

In opposition, Mi-Das argues that "the state court's discovery order is "interlocutory" and can be reconsidered. *Id.* at 2. Defendants also argue that the state court attachment of the M/V BRIGHT LAKER was inappropriate because ITF had no valid claim for money damages under La. Civ. Code Ann. art. § 3542.

"Whenever any action is removed from a State court to a district court . . . any attachment . . . shall hold the goods or estate to answer the final judgment or decree in the same manner as they would have been held to answer final judgment or decree had it been rendered by the State court." 28 U.S.C. § 1450. Similarly, "[a]ll . . . proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." *Id.* "Once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters, Etc.*, 415 U.S. 423, 437 (1974). "It is well established that the state court order becomes federalized insofar as federal, rather than state, procedure governs the manner of its enforcement as well as supplies whatever policy justification must support its continuance." *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1303 (5th Cir. 1988) (citing *Granny Goose*).

6

Accordingly, federal courts evaluate a court's enforcement of state-level discovery measures against whether such enforcement abused the Court's discretion under the federal rules of civil procedure. *See id.* at 1304 (analyzing Court's discovery order against Rule 37(b) standard); *McIntyre v. K-Mart Corp*, 794 F.2d 1023, 1025 (5th Cir. 1986). Where a state court has previously ruled on the validity of a discovery order prior to removal, that order remains "in full force and effect" pursuant to 28 U.S.C. § 1450, and can be enforced after removal at the Court's discretion, even if no Rule 26(f) discovery conference has occurred in federal court. *Samuel v. Aber Co., Inc.*, 2009 WL 2242418, at *2 (M.D. La.. July 24, 2009).[3]

The Court notes that Mi-Das does not dispute that the January 25, 2013 state court order was in force. Moreover, although the procedural history is somewhat muddled, the Court finds that the October 8, 2012 order was also still in force. The October 8, 2012 order was subject to a motion to vacate in federal court during Defendants' first removal, although the motion was denied as moot by the presiding U.S. District Judge, due to the fact that the discovery it sought pertained to inspection of ship records and deposing crew members who are no longer physically present. Thereafter, the January 25, 2013 state court order explicitly denied a motion to vacate the "writ of attachment." (R. Doc. 8-3, p. 2).[4]

At oral argument, Mi-Das argued that because its motion to vacate had never been ruled on

---

[3] By contrast, where the state-level discovery requests had not been ruled on in state court prior to removal, Rule 26(d) and Rule 26(f) would operate to preclude such discovery from occurring. *See Riley v. Wallgreen Co.*, 233 F.R.D. 496, 499 (S.D. Tex. 2005).

[4] The January 25, 2013 Order also denied Mi-Das' "Motion to Vacate Attachment," although the parties do not indicate whether this motion is identical to the one filed in federal court. Even to the degree it is identical, the Order did not mention discovery obligations nor include any time period for related compliance. (R. Doc. 8-3, p. 2).

7

prior to the initial remand, Mi-Das could not be expected to comply with the same. However, the Court noted that because the motion to vacate was filed in federal court it was terminated upon remand, and had never been re-filed in state court after the remand. Therefore, the motion to vacate was not presently before the Court and the October 8, 2012 order also remained in force. The Court has been provided with no compelling reason to reconsider these orders.

### 3.     **Effect of Arbitration Clause**

In support of their motion, ITF briefly argues that although this case had been removed from federal court on the basis of an "arbitration clause," this cause was illusory. (R. Doc. 8-1, p. 11).

In their opposition, Defendants argue that since the time they were ordered by the state court to answer ITF's discovery following the February 8, 2013 order, they have "discovered that this suit is subject to a mandatory arbitration clause." (R. Doc. 12, p. 1). According to Defendants, the arbitration clause was not contained in the agreement which they signed, but was incorporated by reference into another document. *Id.* at 4. In their own words, "[t]he IBF Special Agreement on which [ITF's] suit is based specifically incorporates the JSU-IMMAJ collective agreement, which specifically incorporates the IBF Operational Agreement." (R. Doc. 12, p. 4).[5] Defendants argue that they only recently obtained the IBF Operational Agreement, which, they discovered, contained a clause mandating arbitration in disputes over "non-observance of wage scales." *Id.* Defendants argue that because discovery is typically disallowed in a case where arbitration is pending, it should be disallowed here. *Id.*

---

[5] A more detailed explanation of the relationship between these agreements exists in Defendants' Motion to Stay Litigation and Compel Arbitration (R. Doc. 9).

At oral argument, ITF reiterated its arguments, emphasizing that there was no arbitration clause in the subject agreement and that Mi-Das' assertion of the same was a means to escape liability. Defendants also reiterated their argument that they had only recently discovered the arbitration clause in their contract, and discussed it with the Court at some length. The Court found that there was no determination that a written arbitration agreement in fact applies to this case; instead, Defendants had filed a motion to stay and compel arbitration, which was noticed for submission before the presiding U.S. District Judge. (R .Doc. 9). The current posture of the case, then, was that the October 8, 2012 and January 25, 2013 orders remained outstanding and in force at the time the instant motion was heard, and the undersigned lacked authority to determine whether the arbitration agreement was enforceable as between the parties although it is instructive that no arbitration clause exists in the main agreement.

Further, Defendants have not directed the Court to any authority in the Fifth Circuit which mandates such a stay during the pendency of a motion to compel arbitration. Accordingly, the Court declines to find that the pendency of the arbitration dispute should have any bearing on the Court's determination of the merits of the current discovery issue. The Court does find, for reasons stated below, that the *timing* of the presentation of the arbitration agreement is nonetheless probative of Mi-Das' discovery compliance.

### 4. Effect of Motion for *Forum Non Conveniens*

Defendants also argue that consideration of the discovery issues in this case is inappropriate until the threshold issues of *forum non conveniens*, which is also pending before the presiding U.S. District Judge, is determined. (R. Docs. 9; 12, pp. 13-14). According to Defendants, Louisiana is

9

"vexatiously and oppressively inconvenient" for this dispute because all of the relevant witnesses and documents are located overseas. *Id.*

The parties agree with the relatively obvious point that the undersigned has no authority to determine the merits of the *forum non conveniens* dispute; at this point, the most that can be said is that the motion is pending. As such, Defendants' argument fails for similar reasons as does their motion to compel arbitration. Specifically, the undersigned is not entitled to determine whether Louisiana is an "inappropriate forum" for purposes of prosecuting the instant suit. Moreover, the authority which Defendants direct the court to in support of their argument for a stay indicates that such stays are discretionary. (R. Doc. 12, p. 13-14) (citing, *e.g.*, *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987).

The Court finds that in the absence of any controlling authority mandating a stay of such proceedings, and based on both the submissions and the presentations of the parties at oral argument, that given the length of time which has elapsed between the time the discovery orders were issued weighs heavily against staying discovery during the pendency of Defendants' motion. The Court declines to order the same.

### 5.     Effect of Pending State Court Appeal

The next issue is whether the pendency of Mi-Das' supervisory writs at the time of removal should impact the Court's decision to rule on the enforceability of the two state court discovery orders. Although ITF does not specifically raise this issue, beyond stating that Mi-Das had already delayed discovery for five months, (R. Doc. 8-1, p. 6), Defendants tangentially suggest that, at the time of removal, they had pending in the Louisiana Fourth Circuit "supervisory writs . . . seeking,

*inter alia*, a stay of all proceedings (including discovery) pending the appellate court's determination of the threshold jurisdiction, venue and standing issues." (R. Doc. 12, p. 9).

"Louisiana law makes clear that an appellate court's refusal to grant a supervisory writ is not a 'decision on appeal.'" *Louisiana v. Guidry*, 489 F.3d 692, 697 (quoting *Goodwin v. Goodwin*, 607 So.2d 8, 10 (La. App. 2 Cir. 1992). "Upon removal of a case, interlocutory state court orders are transformed by operation of 28 U.S.C. § 1450 into orders of the federal district court to which the action is removed. The district court is thereupon free to treat the order as it would any such interlocutory order it might itself have entered." *Ostowiecki v. Aggressor Fleet, Ltd.*, 2008 WL 2313140, at *3 n.33 (E.D. La. May 30, 2008) (quoting *Nisshi Iwai American Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988).

In this case, the pending actions in the Louisiana Fourth Circuit took the form of supervisory writs, and not final appellate decisions. The "impact" of these pending writs is even further removed from the circumstances of *Ostowiecki*, in that the supervisory writs had not been disposed of at the time of removal, but instead were still pending in the Louisiana Fourth Circuit. Therefore the pending writ does not impact the Court's ability to resolve this issue.

### 6. Adequacy of Response

Having found that the two state court orders can be enforced and that such enforcement should not be stayed, the next issue is whether Mi-Das' responses were adequate.

In support of its motion, ITF argues that Mi-Das is in "violation" of the two orders, but fails to specify exactly why. (R. Doc. 8, p. 1). In opposition, Mi-Das argues that to the extent it was required to comply, it has done so, as the Court's January 25, 2013 order required it to "respond"

11

to the motion without limitation - thus, a "response" could include raising newly discovered objections, such as the arbitration clause. (R. Doc. 12, pp. 19-20).

At oral argument, the parties reiterated their arguments. The Court found that Mi-Das' argument - that the order that it "respond" to ITF's discovery could be couched in the form of an objection - was not credible given the realities of discovery and the fact that aside from the addressing the objections, explicit instructions as to the form of a parties' answer were virtually never included in a discovery order, if ever.

The Court also notes that Defendants' latent "discovery" of the arbitration clause which is allegedly incorporated by reference into their contract is instructive as to whether Mi-Das has undertaken its discovery obligations in good faith. Admittedly, Defendants explained the relationship between the IBF Special Agreement, the JSU-IMMAJ collective agreement, and Disputes Procedure section of the IBF Operational Agreement in both their written submissions and again at oral argument.

However, Defendants never specifically explained *when* discovery of the arbitration clause occurred. The Court notes that it is would be highly fortuitous for Defendants to have "discovered" the arbitration clause just as they reached their deadline for complying with the state court's January 25, 2013 discovery order. Instead, the Court finds it more likely that this "discovery" allowed Defendants another opportunity to attempt to avoid their discovery obligations again. In any event, it is clear to the Court that to date Mi-Das has failed to make a satisfactory effort to comply with either of the two state court orders.

### B.      Appropriate Sanction; Attorney's Fees

#### 1.      Striking Pleadings; Compelling Discovery

Having found that Mi-Das has failed to comply with its discovery obligations under the October 8, 2012 and January 25, 2013 orders, the final issue is what sanction to impose. ITF argues that it has been "more than 5 months since the first state court order was issued ordering the defendants to provide information pertaining to the actual wages being paid the seafarers on board the M/V BRIGHT LAKER . . . . [And] it has now been more than 4 months since plaintiff requested wage information and pay scales relating to 11 vessels" in its November 7, 2012 state court discovery requests. *Id.* at 6.

ITF also argues that its investigation of other vessels which Defendant owns has revealed similar histories of underpayment, and that it is entitled to sanctions for "each vessel owned by Defendants" that was subject to a Special Agreement. *Id.* at 8. ITF also argues that "[a]s an alternative" to the requested discovery, ITF "will be pleased to pick up the wage records from either the Seaman Employment Control Division in Yangoon or from Lizstar Shipping in Yangoon." *Id.* at 10. ITF also suggests that "[t]he defendants can avoid the requested sanctions by simply providing the actual wage records to the ITF's representative who will bring them back to the United States." *Id.*

In opposition, Defendants argue that even if the Court finds sanctions proper, the sanction sought - "entry of a default judgment on liability and unproven damages" - is excessive in a context where it claims that ITF has produced no evidence substantiating its damages claim. (R. Doc. 12, p. 3). Defendants point out that they have attempted to collect some discovery, despite the fact that

logistically much of the information which Mi-Das needs to collect to properly respond to the discovery requests is located on ships "engaged in global trade or . . . in the possession of independent third-party companies in Japan, Singapore and Myanmar over which Mi-Das . . . has no control." *Id.* at 19. Moreover, Defendants argue that they have not repeatedly violated court discovery orders in this case. However, Defendants admit that the Court has "broad discretion to issue discovery sanctions," although such sanctions must related to the particular claims at issue in the pertinent discovery order. *Id.* at 21.

Rule 37(b) permits the trial court to issue any "just" orders when a party fails to comply with a prior discovery order. Rule 37(b)(2)(A). These include "staying further proceedings until the order is obeyed." *Id.* at 37(b)(2)(A)(iv). In order to issue a default judgment for violation of a discovery order, a trial court must find that the violation is (1) wilful and (2) a lesser sanction would not have the desired deterrent effect. *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003). "The reviewing court may also consider whether the discovery violation prejudiced the opposing party's preparation for trial, and whether the client was blameless in the violation." *Id.*

In this case, the Court finds that the mover's request for default as a sanction is excessive as is therefore denied. The Court however hereby orders that no later than 14 days of signing this order that Defendant Mi-Das respond to the discovery by producing wage sale documentation for each of the claimants referenced in Request for Production No. 1.

### 2. Attorney's Fees and Expenses

Additionally, ITF requests that "defendants should be ordered to pay all expenses pertaining

14

to the above [o]rder, including attorney's fees." (R. Doc. 8-1, p. 11).[6] ITF argues that it is entitled to an award of such fees under Rule 37(b)(2)(A). *Id.* at 9. In opposition, Defendants argue that Mi-Das has "raised valid objections and has acted at all times in good faith." (R. Doc. 12, p. 3).

Rule 37(b) provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Rule 37(b)(2)(C).

In this case, the Court finds after further consideration of the parties' submissions and arguments that an award of reasonable attorney's fees and costs which ITF incurred in bringing the instant motion is warranted in this case, as the same were clearly "caused by the failure" of Mi-Das to respond. The Court finds that an award of attorney's fees and costs should be limited to those expenses which ITF incurred in the preparation, submission, and arguing of the instant motion.

## IV.   Conclusion

Accordingly,

**IT IS ORDERED** that the **Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37 (R. Doc. 8)** filed by Plaintiff, International Transport Workers Federation, ("ITF") is **GRANTED** in part and **DENIED** in part.

It is **GRANTED** as to compelling Defendant, Mi-Das Lines, Inc., ("Mi-Das") to comply with the October 8, 2012 and January 25, 2013 discovery orders issued by the Louisiana State Court.

---

[6]ITF does not request such fees and costs under Rule 37(a)(5)(A)-(C), although the Court's analysis would be substantially the same under that provision.

Mi-Das shall comply with the October 8, 2013 and January 25, 2013 orders no later than fourteen days after the issuance of the instant order.

It is **GRANTED** as to attorney's fees arising in connection with ITF's the preparation, submission, and arguing of the instant motion. ITF shall file a motion to fix attorney's fees into the record by **Wednesday, April 24, 2013**, along with: (1) an affidavit attesting to its attorney's education, background, skills, and experience; (2) sufficient evidence of rates charges in other cases by other local attorneys with similar experience, skill and reputation; and (3) the documentation required by Local Rule 54.2. Any opposition to the fee application shall be filed no later than **Wednesday, May 1, 2013**, and the motion shall be heard on that date **without oral argument**.

It is **DENIED** in all other respects.

New Orleans, Louisiana, this 4th day of April, 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**